Josephine ECKENDORF, f/k/a Josephine Bucki, Plaintiff-Respondent,†

v.

Richard AUSTIN and Susan Austin, Defendants-Appellants.

Court of Appeals

*No. 00–0713–FT. Submitted on briefs August 7, 2000.—Decided September 12, 2000.*

## 2000 WI App 219

(Also reported in 619 N.W.2d 129.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Shane W. Falk* of Wausau.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Elizabeth M. Connell* and *Crooks, Low, Connell & Rottier, S.C.*, of Wausau.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Richard and Susan Austin appeal a judgment that limits use of their access and utilities easement. Specifically, they challenge the trial court's conclusion that the easement is imprecisely described in the conveyance, that the driveway portion could not exceed twelve feet in width, and that Josephine Eckendorf was entitled to both $500 for a tree that the Austins cut down and costs of this lawsuit. The Austins argue that the written easement document is not ambiguous and that their use is consistent with the original grantor's intent. For the reasons stated below, we reverse the judgment and remand with directions.

## BACKGROUND

¶ 2. The Austins own property in Wausau and hold an easement adjacent to their property, on Eck-

endorf's property. Rae Best, the Austins' predecessor in interest, granted by deed the thirty-foot-wide easement. The grant specifically describes the area in metes and bounds and adds this explanation:

> Said easement granted to Rae E. Best shall be for the purposes of a driveway for ingress and egress to premises owned by grantee and for a[n] easement for laying of water and sewer mains for repair and maintenance of water and sewer mains to premises owned by grantee . . . .

¶ 3. The Austins have used the easement as a driveway since they purchased the property in 1987. They have not used the easement for utilities, and no evidence indicates that water and sewer mains are needed on the easement at this time. A tree impeded travel over a substantial portion of the driveway. In 1988 or 1989, they built a garage but had difficulty transporting building materials via the driveway.[1] In 1994, a moving van had trouble accessing the garage because the maple tree obstructed the driveway. Richard testified that his vehicle hit a bird feeder that hung on a branch over the driveway on more than one occasion. He stated that although he moved the feeder out of the way each time, it was replaced on the tree branches farther out over the easement. A surveyor agreed that the driveway was inadequate for delivering building materials or appliances with a single axle truck until it was widened in the spring of 1999 to twenty-four feet.

¶ 4. The Austins have improved the driveway over the years by removing the blacktop, resurfacing

---

[1] Although Richard Austin does not specify, the other testimony implies that the difficulty was because of a bend in the driveway and a maple tree.

part of the area with cement, and adding rotten granite in places. They also removed the maple tree when they widened the driveway.

¶ 5. Once she realized that she owned the property, albeit encumbered by easement rights, Eckendorf used part of the easement area. She raked the lawn and placed lawn furniture on the area not used as ingress or egress. After the Austins widened the driveway and cut down the maple tree, Eckendorf brought this action for a declaration of interests regarding the easement.

¶ 6. After a trial to the court, the court granted judgment in favor of Eckendorf. The trial court relied on *Atkinson v. Mentzel*, 211 Wis. 2d 628, 643, 566 N.W.2d 158 (Ct. App. 1997), as authority to apportion the uses specified in the grant. *Atkinson* provides that a court may "fix a reasonably convenient access route" when the easement lacks precision and the parties disagree on its location. *See id.* at 641–43. The trial court determined that the space must be apportioned for each use and that a thirty-foot-wide driveway was unreasonable. The court ordered that the easement's width be divided according to the uses described in the grant: twelve feet for the driveway and eighteen feet for water and sewer mains. It further ordered the Austins to remove that portion of the driveway that extended beyond twelve feet and to restore grass to the area the court allocated for water and sewer mains. Finally, the court ordered the Austins to pay Eckendorf $500 for the maple tree and to pay her costs.

## DISCUSSION

### 1. Ambiguity in the Grant

¶ 7. "An easement is an interest in land which is in the possession of another." *Id.* at 637. The deed granting the easement defines the relative rights of the landowners. *See Hunter v. McDonald,* 78 Wis. 2d 338, 342–43, 254 N.W.2d 282 (1977). If the language within the four corners of the deed is unambiguous, the court need not look further for the parties' intent. *See Rikkers v. Ryan,* 76 Wis. 2d 185, 188, 251 N.W.2d 25 (1977). Whether the deed's language is ambiguous is a question of law and will be reviewed de novo. *See Atkinson,* 211 Wis. 2d at 638.

¶ 8. The Austins first argue that the trial court erred when it found that the easement grant was ambiguous and reconfigured the grant. They assert that the grant specifically describes the area covered and the purposes for which it is to be used. The Austins claim that an ambiguity does not exist merely because the easement has two purposes. We agree.

¶ 9. As indicated, the trial court found the easement to be imprecisely described, but only because the grant did not allocate specific space for the allowed uses. *Atkinson,* however, is inapposite because the easement granted in that case lacked a legal description. *See id.* at 635, 642. The parties disagreed as to the easement's location. *See id.* at 632–33. The grant in *Atkinson* merely promised "access for all uses of said property other than retail sales." *Id.* at 638. Because it did not describe where the easement was situated, the court fixed a reasonably convenient access route. Although utilities were also at issue in *Atkinson,* the court did not define the space for each possible use

74

under the grant's broad language. *See id.* Therefore, *Atkinson* does not support a conclusion that a dual-purpose easement is imprecise when the grant does not specify the precise location for each use.

¶ 10. There was no dispute concerning the metes and bounds description; the disagreement concerned only apportionment of use. The easement includes a legal description precisely describing its location in degrees and minutes and to the hundredth of a foot. Further, the dual purposes are both designed to benefit the easement holder. If the Austins determine that utilities are needed, they may remove the portions of their driveway that impede that use. The grant is not ambiguous, and the court should have enforced it as written.

2. Intended Use of the Easement

¶ 11. The Austins alternatively argue that the deed unambiguously expresses the grantor's intent and the grantor did not reserve the right to further define the subeasements. Therefore, they assert, the court is without authority to look beyond the deed for an intent to apportion the space for the various uses. We agree.

¶ 12. The meaning of language in a deed is reviewed de novo. *See Hunter v. Keys,* 229 Wis. 2d 710, 715, 600 N.W.2d 269 (Ct. App. 1999) (citing *Atkinson,* 211 Wis. 2d at 638). "The use of the easement must be in accordance with and confined to the terms and purposes of the grant." *McDonald,* 78 Wis. 2d at 343. The easement holder may improve, even fill in wetlands, on a roadway used for ingress and egress so long as the improvements do not unreasonably burden the servi-

ent estate. *See Keys*, 229 Wis. 2d at 717. The purpose stated in the grant defines the easement's reasonable use. Here, the grant provided that the easement was for ingress and egress and for water and sewer installation and repair. The Austins may determine how to use the land rights granted to them. They have the right to put the land to either use, or to both.

■

¶ 13. This court has previously approved construction of driveways on easements that exceeded the changes the Austins made. For example, *Keys* concluded that thirty-three feet is not unreasonably wide for a driveway easement. *See id.* at 715. The Austins have only used twenty-four of their thirty-foot easement for a driveway. Eckendorf has not demonstrated that they have unreasonably burdened her estate and, therefore, the Austins are entitled to improve the driveway as they have.

3. The Tree

■

¶ 14. "An obstruction or disturbance of an easement is anything which wrongfully interferes with the privilege to which the owner of the easement is entitled by making its use less convenient and beneficial than before." *See McDonald*, 78 Wis. 2d at 344 (citing 28 C.J.S. *Easements* § 96). The tree the Austins cut down, for which the court awarded Eckendorf damages, may have obstructed or disturbed the easement. Items that do not physically encroach upon an easement may still interfere with its use. *See id.* at 344–45. The court did not make findings on the tree's location and relative impediment. We remand this issue to the trial court. If the tree wrongfully blocked the use of the easement,

then the Austins were entitled to remove it, and Eckendorf would not be entitled to damages.

*By the Court.*—Judgment reversed and cause remanded with directions.